**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**ANGIENETTE FOSTER**                                                                    **PLAINTIFF**

**V.**                              **CASE NO. 2:15-CV-169-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                     **DEFENDANT**

**ORDER AFFIRMING THE COMMISSIONER**

Plaintiff Angienette Foster brings this action for review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").  For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

**I.    Procedural History:**

Ms. Foster filed her application for DIB on March 7, 2013.  (Tr. 11)  She also filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act.  (Id.)  Ms. Foster alleged disability since February 28, 2013, due to fracture of the lower limbs and seizures.  (Tr. 73)  She was insured for DIB through the end of December 31, 2017.  (Tr. 15)  Her claims were denied at the initial and reconsideration levels.  (Tr. 11)

On April 10, 2014, a hearing was held before an ALJ, where Ms. Foster was represented by her attorney.  (Tr. 11)  On June 23, 2014, the ALJ denied Ms. Foster's claims.  (Tr. 21)  On September 14, 2015, the Appeals Council denied her request for

review. (Tr. 1) Ms. Foster seeks judicial review of the Commissioner's denial of her application. The parties consented to the jurisdiction of the Magistrate Judge, and the case is ripe for decision.

## II.   Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[1]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

The ALJ found that Ms. Foster had not engaged in substantial gainful activity since February 28, 2013. (Tr. 15) Ms. Foster's multiple fractures/lacerations post motor vehicle accident, right ulnar fracture, left femur fractures, right open tibia-fibula, and seizure disorder were deemed severe impairments. (*Id.*) According to the ALJ, Ms. Foster did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

---

[1] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 416.920(a)(4)(iv).

The ALJ determined that Ms. Foster retained the residual functional capacity to perform light work limited to occasional stooping, crouching, crawling, kneeling, balancing, and climbing of ramps/stairs (but no climbing of ladders/scaffolds). (Tr. 16) She was required to use a cane and avoid exposed hazards such as unprotected heights or dangerous machinery. (*Id*.) With the assistance of a vocational expert, the ALJ found that Ms. Foster could perform her past relevant work as a data entry clerk, an assembly line worker, and a receptionist. (Tr. 19) In the alternative, the ALJ found that, considering Ms. Foster's age, education, work history, and residual functioning capacity, she would be able to perform other work in the economy as a cashier II, general cashier, and ticket seller. (Tr. 20) Accordingly, the ALJ found that Ms. Foster was not disabled. (Tr. 21)

**III.** **Analysis:**

    A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); 42 U.S.C. § 405(g). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may

support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

    B.    *Plaintiff's Arguments*

Ms. Foster asserts that the ALJ's findings are not supported by substantial evidence: (1) because the ALJ failed to develop the record regarding Ms. Foster's seizures, she erred in finding that Ms. Foster did not meet listing 11.02 or 11.03. 20 C.F.R. Part 404, Subpart P, Appendix 1; and (2) because the ALJ's credibility analysis was flawed. (docket entry #16 at 10, 13)

    C.    *Impairment Listings*

A claimant has the burden of proving that an impairment, or combination of impairments, meets or equals a Listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted).

In order to meet Listing 11.02, a claimant must have seizures more than once a month in spite of at least 3 months of treatment, and meet criteria (A): daytime episodes including loss of consciousness and convulsive seizures; and (B): nocturnal episodes manifesting residuals which interfere significantly with activity during the day. (#16 at 11) In order to meet Listing 11.03, a claimant must have seizures occurring more than once a month in spite of at least 3 months of treatment, with alteration of awareness or

loss of consciousness and transient postictal manifestations of unconventional behavior or significant activity during the day. (*Id*.) Ms. Foster did not meet either Listing.

The record reflects Ms. Foster's complaints on April 29, 2013 regarding her seizures, including shaking, biting, loss of consciousness, and hallucinations (Tr. 385). She also complained on May 31, 2013 of headaches, dizziness, blurry vision, and passing out due to her seizures. (Tr. 365) She was prescribed Depakote. (*Id*.) Ms. Foster's complaints, however, were not accompanied by any objective testing or diagnosis of a seizure disorder. (#17 at 8) Although Ms. Foster complained of 1-2 seizures per week, she reported she had not had a seizure in two weeks since being on medication for only one month. Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)

Ms. Foster admits that she does not meet the three-month treatment requirement to meet listing 11.02 or 11.03. (#16 at 11) She argues that if her symptoms persisted beyond the three-month period she would meet a listing. That is speculation. There is no record of follow-up treatment for seizures after May of 2013. Ms. Foster's testimony at the hearing in April 2014 that she was still having seizures is not supported by any visits to a treating physician. (#16 at 12) The ALJ notes that Ms. Foster did not visit the emergency room for any seizure activity, and prescription of one medication for one month does not indicate a severe disability (there is no treatment record to show the effects of Depakote beyond May 2013). (Tr. 17) Subjective complaints "may be

discounted if there are inconsistencies in the evidence as a whole, and the ALJ may properly rely upon discrepancies between [a claimant's] allegations of pain and her treatment history, medicinal selections, and daily activities in disregarding her subjective complaints." *Davis v. Apfel*, 239 F.3d 962, 968 (8th Cir. 2011)  There is simply not enough objective evidence to support a finding that Ms. Foster met a Listing.  The ALJ's discussion of her treatment gaps and responses to medication support her decision.

Additionally, there is no merit to Ms. Foster's contention that the ALJ did not fully develop the record.  Ms. Foster had the burden of proving her disability.  *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996).  The ALJ need not make her case for her.  When Ms. Foster's attorney was asked at the hearing if the record was complete, he responded in the affirmative.  (#17 at 9).  He did not ask the ALJ for a consultative examination or for follow-up evidence from Ms. Foster's doctor.  Ms. Foster had plenty of time to develop the record on her seizure disorder (nearly a year from May 2013 to April 2014) but did not.

      D.    *The ALJ's credibility analysis*

In evaluating Ms. Foster's credibility, the ALJ properly considered the factors set forth by the Eighth Circuit in *Polaski v. Heckler*.  The ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  As for

the seizures, the ALJ considered the record and found Ms. Foster's claim that she had 1-2 seizures per week and could only sit and stand for two hours to be unfounded. The record shows that Ms. Foster sought only conservative treatment for her seizures, inconsistently at that. On several visits to her orthopedic doctor for injuries resulting from a car wreck, she did not mention seizures. Her lack of complaints to a treating source detracts from her allegations of a disabling impairment.

Regarding the injuries from the car wreck, the ALJ found that those constituted severe impairments. The medical evidence, however, shows that Ms. Foster recovered on a reasonable time line from those injuries. On a follow-up visit after surgery, she reported that she had "no complaints." (Tr. 388) Upon return, it was noted that Plaintiff looked "satisfactory post-op." (Tr. 386) Plaintiff next reported to her doctor that she was doing well three months after her surgery. (Tr. 383) No doctors placed her on significant restrictions for either seizures or wreck injuries. (Tr. 18) A lack of significant restrictions placed on a claimant by her physicians undermines her allegation of disability. *Tennant v. Apfel*, 224 F.3d 869, 870-71 (8th Cir. 2000)(ALJ properly relied on lack of physician-ordered limitations to discredit claimant).

A function report Ms. Foster filled out in March 2013 portrays her as a virtual invalid incapable of doing most activities of daily living. At the hearing in April 2014, however, she testified that she took online classes, could help with cooking, could fold laundry, and grocery shop. (Tr. 39-40) This testimony comports with the medical

evidence showing improvement in her conditions over the course of a year.  The ALJ ascribed the correct weight to Ms. Foster's complaints, finding that her credibility as to the extent of her impairments was in doubt.

## IV. Conclusion:

Substantial evidence supports the ALJ's decision denying Ms. Foster's application.  The ALJ made no legal error.  For these reasons, Ms. Foster's request for relief (#2) is DENIED, and the decision denying the application for benefits is AFFIRMED.

IT IS SO ORDERED this 28th day of July, 2016.

_____
UNITED STATES MAGISTRATE JUDGE